United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INLANDBOATMEN'S UNION OF THE PACIFIC, MARINE DIVISION, ILWU,<br><br>    Plaintiff,<br><br>  v.<br><br>FRAN MAINELLA, in her official capacity as DIRECTOR, UNITED STATES DEPARTMENT OF INTERIOR, NATIONAL PARK SERVICE, and the UNITED STATES DEPARTMENT OF INTERIOR, NATIONAL PARK SERVICE,<br><br>    Defendants.<br>_____/ | No. C 06-2152-CW<br><br>ORDER DENYING PLAINTIFF IBU'S MOTION TO MODIFY PRELIMINARY INJUNCTION |

    Plaintiff Inlandboatmen's Union of the Pacific, Marine Division, ILWU (IBU) moves to modify the preliminary injunction issued by the Court on May 1, 2006. Defendants Fran Mainella and United States Department of Interior, National Park Services (NPS) oppose the motion. Intervenor Alcatraz Cruises LLC also opposes the motion. The matter was decided on the papers. Having considered all of the papers filed by the parties, the Court denies Plaintiff IBU's motion.

BACKGROUND

This case concerns a NPS concession contract. Plaintiff IBU and the International Organization of Masters, Mates and Pilots, Pacific Maritime Region (MM&P) filed separate suits in this district, both bringing motions for a preliminary injunction.[1] MM&P sought to enjoin Defendants from awarding a new concession contract to Intervenor that violates the SCA by allowing Intervenor to pay less than the wages and benefits specified in MM&P's collective bargaining agreement with the Blue & Gold Fleet. Plaintiff IBU, however, sought a broader injunction. It sought to enjoin Defendants (1) from awarding any NPS concession contracts, the principle purpose of which is to furnish transportation services, in response to a solicitation that does not expressly set forth the applicability of the SCA; and (2) from allowing any contractor on any concession contract, the principle purpose of which is to provide transportation services, to pay its employees wages and fringe benefits lower than those required by the SCA.

On May 1, 2006, the Court ordered:

> Defendants are preliminarily enjoined from awarding a contract, for the continuation of water transportation services between the City of San Francisco, California and Alcatraz Island and related services, that permits any contractor or subcontractor under it to pay its employees providing services under such contract less than the wages and fringe benefits specified in Plaintiffs' collective bargaining agreements with Blue & Gold Fleet, LLP, including any prospective increases in wages and fringe benefits specified in such collective bargaining agreements.

The Court stayed the case pending the Department of Labor's

---

[1] The factual background of this case is described in the Court's May 26, 2006 order.

2

determination of whether the Service Contract Act applies to the concession contract at issue.  On May 26, 2005, the Court issued an opinion explaining its reasoning for issuing the preliminary injunction.

Four days after the Court's order, Defendant NPS sent a letter to Blue & Gold Fleet, requesting that it continue service under the concession contract through and including September 24, 2006.  Blue & Gold agreed to continue service.

On May 8, 2006, Defendant NPS sent a letter to Intervenor. The letter advised Intervenor that section 5 of the concession contract states that the concessioner must comply with all applicable laws in fulfilling its obligations under the contract and that the applicable law includes this Court's May 1, 2006 preliminary injunction.  Intervenor counter-signed the letter, acknowledging that the Court's order was part of the applicable law with which it must comply.  The next day, Defendant NPS fully executed the Alcatraz concession contract, thus awarding it to Intervenor within the meaning of 36 C.F.R. Part 51.

Since being awarded the contract, Intervenor has developed and implemented a ticket-sales structure.  In July, 2005, it began to sell tickets for the Alcatraz ferry service and collect money from future passengers.  It has hired eight management-level employees to run its infrastructure and to prepare for operation under the contract, and engaged various consultants and developed visitor services.  Intervenor states that to date it has spent over $6,000,000, responding to Defendant NPS' solicitation and preparing to begin service on September 25, 2006.  As of the date it filed

3

its opposition, however, Intervenor had not hired employees for positions covered by the collective bargaining agreements in place at Blue & Gold Fleet.

Almost three months after Defendant NPS executed the contract, Plaintiff IBU filed this motion to modify the preliminary injunction.[2] It contends that, although the award of the contract complied with the Court's preliminary injunction, it violated the 1998 Concessions Act because the concessions contract materially amends the proposed terms and conditions of the contract as set forth in the prospectus. See 16 U.S.C. § 5952(4)(D). Plaintiff IBU requests that the Court modify the May 1, 2006 preliminary injunction to include the following language:

> Defendants are preliminarily enjoined from awarding any NPS concession contract, the principle purpose of which is to furnish transportation service to and from Alcatraz, or allowing the performance of any recently awarded concessions contract having that principle purpose, unless the solicitation therefore as well as the draft contract set forth in that solicitation expressly set forth the applicability of the Service Contract Act and the fact that the contractor would be required to pay the wages and benefits required by the Service Contract Act.

DISCUSSION

Before the Court addresses the merits of Plaintiff IBU's motion to modify the preliminary injunction, it first addresses Defendants' argument regarding jurisdiction.[3]

I. Jurisdiction

Federal district courts are courts of limited jurisdiction.

---

[2] MM&P has not brought a similar motion.

[3] Because the Court does not grant the relief requested, Defendants' argument that Plaintiff IBU lacks standing under the 1998 Concessions Act is moot.

4

1 Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377
2 (1994).  They enjoy the power to hear cases only to the extent
3 authorized by the Constitution and Congress.  Id.  Therefore, the
4 Court must resolve any challenge to its jurisdiction before it
5 proceeds to the merits of a claim.  See, e.g., Galvan v. Fed.
6 Prison Indus., 199 F.3d 461, 463 (D.C. Cir. 1999) ("Jurisdiction
7 must be established before a federal court may proceed to any other
8 question.").

9     Defendants argue that the Administrative Dispute Resolution
10 Act (ADRA), 28 U.S.C. § 1491, deprives this Court of jurisdiction.
11 But, as the Tenth Circuit concluded, "the Administrative Dispute
12 Resolution Act did not affect the district court's ability to hear
13 cases challenging the government's contract procurement process so
14 long as the case is brought by someone other than an actual or
15 potential bidder.  The district court retains subject matter
16 jurisdiction over cases brought by non-bidders under 28 U.S.C.
17 § 1331 and the waiver of sovereign immunity in the Administrative
18 Procedure Act."  City Of Albuquerque v. U.S. Dept. Of Interior, 379
19 F.3d 901, 911 (10th Cir. 2004).  See also Nat'l Treasury Employees
20 Union v. IRS, 2006 WL 416161, *3 (D. D.C. 2006) (holding that the
21 ADRA did not deprive the court of jurisdiction over parties that
22 are not actual or prospective bidders or offerers).  Defendants'
23 attempts to distinguish City of Albuquerque are not successful.
24 The Court finds the reasoning in City of Albuquerque persuasive and
25 that it has jurisdiction.

II. Merits

The Court may modify a preliminary injunction if a change in circumstances requires it. <u>Anderson v. Central Point Sch. Dist. No. 6</u>, 746 F.2d 505, 507 (9th Cir. 1984). The Ninth Circuit instructs that the "party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction." <u>Sharp v. Weston</u>, 233 F.3d 1166, 1170 (9th Cir. 2000). Plaintiff IBU, however, does not address this standard. Rather, in its moving papers, it cites the standard for whether a preliminary injunction should be granted in the first instance. Even in its reply, after Defendants and Intervenor pointed out the correct standard, Plaintiff IBU did not address this standard. Nonetheless, applying either the standard for modification of an injunction or the standard for an initial preliminary injunction, Plaintiff IBU's motion fails.

According to Plaintiff IBU, Defendant NPS's post-injunction conduct, specifically, executing the Alcatraz contract, violates the 1998 Concessions Act, requiring the Court to modify the preliminary injunction. Title 16 U.S.C. § 5952(4)(D) provides:

> The Secretary may not execute a concessions contract which materially amends or does not incorporate the proposed terms and conditions of the concessions contract as set forth in the applicable prospectus. If proposed material amendments or changes are considered appropriate by the Secretary, the Secretary shall resolicit offers for the concessions contract incorporating such material amendments or changes.

Plaintiff IBU contends that Defendants materially amended the proposed terms of the contract when they incorporated the Court's preliminary injunction order into the proposed contract and thus

6

1 Defendant NPS should be required to re-solicit offers for the
2 contract.

3 But Plaintiff IBU does not show that this was a "significant
4 change in facts" warranting modification of the preliminary
5 injunction.  As Intervenor notes, the preliminary injunction
6 authorized Defendant NPS to award the contract as long as
7 Intervenor agreed to pay the wage and benefit levels set forth in
8 the collective bargaining agreements.  See April 28, 2006 Hearing
9 Transcript at 41:20-24.  Intervenor agreed to do so by accepting
10 the Court's preliminary injunction as part of the applicable law it
11 was required to follow.  This is not a significant change, but
12 rather an expected result, as Plaintiff IBU concedes, permitted by
13 the preliminary injunction.  Furthermore, as Intervenor points out,
14 and Plaintiff IBU does not deny, Plaintiff IBU was aware that an
15 amendment to the contract, agreeing to pay the wage and benefit
16 levels set forth in the collective bargaining agreements, could
17 violate the 1998 Concessions Act.  Yet, Plaintiff IBU did not raise
18 this until now, seeking relief that it previously requested and
19 that the Court denied.

20 Plaintiff IBU also fails to show that it is likely to succeed
21 on the merits of its claim under the 1998 Concessions Act.  Whether
22 Defendant NPS violated the 1998 Concessions Act by interpreting
23 this Court's order as part of the applicable law turns on whether
24 that modification materially changed the scope of the original
25 contract.  Cardinal Maintenance Serv., Inc. v. United States, 63
26 Fed. Cl. 98, 106 (Fed. Cl. 2004).  Thus, the question is whether
27 the original contract, as modified, calls for "essentially the same

7

performance." Id.  In addition, courts have determined whether modifications to government contracts are material by looking to "the extent of any changes in the type of work, performance period and costs between the contract as awarded and modified." Id. Defendants note that, here, the performance remains exactly the same, the performance period remains exactly the same and the financial return to the government remains exactly the same.  The only change that Plaintiff IBU points to is that the contracting party is now required to pay no less than the wage and fringe benefits specified in the collective bargaining agreement with Blue & Gold Fleet.  That single change, however, does not change the performance of the contract.  It will be difficult for Plaintiff IBU to show that there was a material modification that changed the scope of the original contract.  Thus, Plaintiff IBU cannot show a combination of probable success on the merits and the possibility of irreparable injury, nor can it show that serious questions are raised and the balance of hardships tips sharply in its favor. Save Our Sonoran, Inc. v. Flowers, 408 F.3d 1113, 120 (9th Cir. 2005).

Plaintiff IBU does not meet its burden of showing that the preliminary injunction should be modified under any test; its motion is denied.

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff IBU's

8

Motion to Modify Preliminary Injunction (Docket No. 53).[4]

IT IS SO ORDERED.

Dated: 9/7/06

_____
CLAUDIA WILKEN
United States District Judge

---

[4]To the extent that the Court relied upon evidence to which Intervenor objected, its objections are overruled. To the extent that the Court did not rely on such evidence, its objections are overruled as moot.